

**Baker & McKenzie LLP**

452 Fifth Avenue
New York, NY 10018
United States

Tel: +1 212 626 4100
Fax: +1 212 310 1600
www.bakermckenzie.com

October 10, 2024

Kemper P. Diehl
Susman Godfrey LLP
401 Union Street, Suite 3000
Seattle, WA 98101

<u>VIA EMAIL</u>
(kdiehl@susmangodfrey.com)

**Re:** *In re China Construction Bank Corp.* (This document relates to *Homeowners of America Ins. Co. v. China Construction Bank Corp.*, 24-cv-3591-VM)

Dear Mr. Diehl:

Pursuant to Judge Marrero's Individual Rules, Rule II.B., we write on behalf of Defendant China Construction Bank (Asia) Corporation Limited ("***CCB Asia***") to inform you of CCB Asia's intent to move to dismiss Plaintiffs' First Amended Complaint for lack of personal jurisdiction and failure to state a claim.

### I. CCB Asia is Not Subject to Personal Jurisdiction in New York.

As explained more fully below, despite a free "do over" with the benefit of our prior briefing, there are still no allegations supporting personal jurisdiction over CCB Asia. CCB Asia is not a branch but a separately incorporated and wholly-owned subsidiary of China Construction Bank Corporation ("***CCB***") with its place of incorporation and principal place of business in Hong Kong (*see Am. Compl.* ¶ 14); therefore this foreign entity is not "at home" in New York. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). The fact that CCB Asia's parent company maintains a branch office in New York does not change this analysis; such contacts do not establish personal jurisdiction over the parent, much less its subsidiary. *Gucci Am. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014). Nor does bringing a section 1782 action in aid of a **foreign** proceeding constitute consent to personal jurisdiction in the state. *Vaval v. Stanco*, LLC, 219 A.D.3d 1466, 1468 (2d Dept. 2023). Accordingly, no basis for general personal jurisdiction exists.

Further, a rogue employee stuffing envelopes in Hong Kong with a fraudulent collateral letter and a fraudulent letter of credit ("***LOC***"), and sending those letters to Texas (*Am. Compl.* ¶¶ 57, 59-64, 68-70), does not suffice to establish specific jurisdiction in New York, which requires "purposeful activity in New York." *Mayes v. Leipziger*, 674 F.2d 178, 184 (2d Cir. 1982). Plaintiffs point to no jurisdictionally significant activity in New York. Plaintiffs have not pled that CCB Asia or its purported agent, Chun Yin Lam ("***Lam***"), a former low-level employee in the consumer banking division in Hong Kong, ever "entered New York," ever "initiated contact" with a party in New York, or ever "sought to participate" in any activity in New York. *Id*. Affixing a New York address on a forged LOC is *not* a transaction of business in New York, and because Plaintiffs "allege[] no action taken by [CCB Asia] *in New York* in connection with" the LOCs and "point[] to no [suit-related] act by [CCB Asia] in New York, there is no basis for specific jurisdiction." *NovelAire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472 (CM), 2013 WL 6182938, at *10-11 (S.D.N.Y. Nov. 21, 2013). Further, for a principal to be subject to jurisdiction for the acts of an agent, the agent "must have acted for the benefit of and with the knowledge and consent of the non-resident principal." *Edwardo v. Roman Cath. Bishop of Providence*, 66 F. 4th 69, 74 (2d Cir. 2023). Plaintiffs make only conclusory and implausible allegations of benefit and knowledge, and no allegations of consent. There is no basis for specific personal jurisdiction over CCB Asia.

### II. Plaintiffs Fail to State a Fraud Claim Against CCB Asia.

Similarly, Plaintiffs' First Amended Complaint still fails to state a fraud claim. Leaving aside wholly conclusory allegations and those conjured out of the void of "information and belief," no facts pled demonstrate that Lam was acting within the scope of his authority or that there was any benefit to CCB Asia from the issuance of fraudulent LOCs for which CCB Asia received no fees, no collateral, and only risk. Nor are there actual facts alleged to support that CCB Asia ever imbued this low-level employee with actual or apparent



authority to commit this fraud, or that Plaintiffs could have reasonably relied on his misrepresentations. As such, the Amended Complaint, like its predecessor, falls short and should be withdrawn.

### a. Plaintiffs' "Shotgun Pleadings" Violate F.R.C.P. 8(a) and 9(b).

Plaintiffs still fail to distinguish between Defendants at critical junctures or plead the fraud each Defendant allegedly committed with particularity. Under Rule 8(a), even where defendants share corporate affiliation, "plaintiffs cannot simply lump defendants together for pleading purposes." *Nesbeth v. N.Y.C. Mgmt., LLC*, No. 17 Civ. 8650, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019). Rule 9(b) also requires that, when multiple defendants are charged with fraud, the complaint must specify each defendant's participation. *See Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993). Yet Plaintiffs continue to lump together each CCB defendant, which is "unacceptable" and grounds for dismissal. *See id.*

### b. Plaintiffs Fail to Properly Plead Fraud by CCB Asia.

Plaintiffs' fraud claims are largely based on the doctrine of *respondeat superior. Am. Compl*. ¶¶ 120-127. But an employer will not be held liable under that doctrine for actions that "were not taken in furtherance of the employer's interest" and were instead "undertaken by the employee for wholly personal motives." *Chau v. Donovan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019). To attempt to fill this hole, the Amended Complaint now includes allegations that Lam's issuance of fraudulent LOCs somehow provided "a stream of revenues to" and "benefitted" CCB Asia "by growing their operations in the United States." *Am. Compl.* ¶¶ 92-93. These conclusory allegations are wildly implausible: no factual allegations are pled regarding any stream of revenues actually received by CCB Asia, nor is there a plausible explanation as to how CCB Asia was going to grow its U.S. business through forging letters of credit. Factual allegations must be "plausible" before a court will consider if they suffice to establish liability; Plaintiffs have failed to make such plausible allegations here. *Lefkowitz v. Bank of N.Y.*, 676 F. Supp. 2d 229, 248 (S.D.N.Y. 2009) (Marrero, J.).

Nor have Plaintiffs cured their failure to plausibly allege that Lam acted within the scope of his employment in issuing a forged $300,000,000 LOC. Plaintiffs' argument that a job posting on CCB Asia's website cloaked him with authority borders on the frivolous. The "duties" Plaintiffs identify all relate to consumer banking services, and the very posting Plaintiffs cite makes clear that consumer banking managers like Lam must "*refer*" and "handshake" (*i.e.*, introduce) insurance customers to an appropriate "specialist." (*Am. Compl*. ¶ 91, n. 30.) As sophisticated reinsurers, Plaintiffs should know that multi-million dollar LOCs are issued by commercial banking—not local retail branch employees—and a reasonable person would not infer from Lam's job title that his job duties included issuing LOCs, on behalf of the foreign branch office of a separate bank, valued in the hundreds of millions of dollars. *VFP Invs. I LLC v. Foot Locker, Inc*., 2015 WL 6499513, at *3 (N.Y. Sup. Ct. N.Y. Cty. Oct. 22, 2015), *aff'd* 147 A.D.3d 491 (1st Dept. 2017). The fraud claim can be dismissed on this basis alone.

Even if Plaintiffs could clear this hurdle—which they cannot—they do not allege that they *reasonably relied* on the collateral letters and LOC. *See Pauwels v. Deloitte LLP*, 83 F. 4th 171, 190 (2d Cir. 2023). Plaintiffs are licensed insurance carriers and their affiliates; not naïve investors. *See Am. Compl*. ¶¶ 8-11, 35. Yet Plaintiffs do not allege that they took *any* steps to protect themselves against deception by, for example, determining (i) whether Xu Yingde ("*Xu*")—the signatory on the fraudulent documents—was authorized to enter into the transaction or was even an actual person or (ii) why a *$300,000,000 LOC* on CCB NY letterhead, purporting to have been issued by CCB NY, was mailed from Hong Kong by an employee of a different entity (CCB Asia). "[R]eliance is not reasonable where 'a sophisticated party performs no independent investigation . . .'" *Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 CIV. 5607 (NRB), 2017 WL 2984023, at *4 (S.D.N.Y. July 6, 2017).

Plaintiffs appear to contend that their insurance broker's lack of due diligence justifies their purported reliance. *Am Compl*. ¶ 63. But the failure of a party or its agents to perform due diligence is itself grounds for dismissal. *See, e.g.*, *Yawand-Wossen v. M Square Builders LLC*, 2021 WL 6203238, at *4 (Sup. Ct. N.Y. Cty. Dec. 23, 2021). Plaintiffs further concede, in a related lawsuit filed in Texas, that their insurance broker's reliance was unreasonable because it "ignored critical red flags that would have warned any reasonably diligent insurance broker" that these letters were "unreliable." *Porch.com, Inc. v. Arthur J. Gallagher & Co.*, No. 3:24-cv-01475

2

(N.D. Tex. June 14, 2024), Dkt. 1-5 at 4.[1]  The same red flags were available to Plaintiffs, and to the extent their broker failed to perform due diligence, that lapse is imputed to Plaintiffs.  *See Terra Sec. ASA Konkursbo v. Citigroup, Inc*., 820 F. Supp. 2d 541, 547 (S.D.N.Y. 2011) (J. Marrero).

Plaintiffs contend, in the alternative, that Lam "had actual authority to enter into transactions on behalf of CCBC and CCB Asia." (*Am Compl.* ¶ 91.)  But that does not suffice.  First, it misses the point entirely.  Xu was the signatory on the letters at issue, not Lam, and it is Xu's authority that must be tested, not Lam's.  But Plaintiffs concede that Xu is not a real person (*id.* at ¶ 95), and because they have no basis for imputing liability to CCB Asia through the actual or apparent authority *of a fictional character*, Plaintiffs must contort their allegations to assert reliance on Lam's actual or apparent authority.  *See id.* at ¶¶ 85-97.  Here too, they fail.  While Plaintiffs contend that Lam had actual authority to enter into "transactions," Plaintiffs do not include any factual allegations that CCB Asia conveyed to Lam—by words or conduct—the actual authority to enter into *the types of transactions complained of here*: issuing commercial LOCs, including the fraudulent and massive nine-figure LOC he sent to Plaintiffs.  *See*, *e.g.*, *M&C Saatchi PR LLP v. Beer Frost, Inc.*, No. 16 Civ. 8866, 2019 WL 2717199, at *4 (S.D.N.Y. June 28, 2019) (actual authority exists "only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act").

Plaintiffs' assertions regarding Lam's apparent authority fare no better.  For those to succeed, Plaintiffs must allege *that CCB Asia itself* engaged in misleading conduct that cloaked an agent with the appearance of authority to conduct the transaction in question.  *See Holmes v. Allstate Corp.*, No. 11 CIV. 1543, 2012 WL 627238, at *10 (S.D.N.Y. Jan. 27, 2012).  Plaintiffs instead contend that such apparent authority can be discerned through the "language and face of the letters at issue" that Lam fabricated.  (*Am Compl.* ¶ 96.)  But an agent cannot "by his own acts imbue himself with apparent authority."  *Hallock v. State*, 64 N.Y.2d 224, 231 (1984).  Nor would Lam's email address, signature block or title convey apparent authority, especially where "[plaintiff] merely had to contact [defendant] to learn that [employees] were not [so] authorized."  *Foot Locker, Inc.*, 2015 WL 6499513, at *4; *see also Star Funding, Inc. v. Tire Centers*, LLC, 717 Fed. Appx. 38, 42 (2d Cir. 2017).  These are red herrings anyway because Plaintiffs do not allege to have even seen Lam's email address, signature block or title, or even to have known his name, before entering into the reinsurance transactions at issue.  *Am. Compl.* ¶¶ 72-77; *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 70 (2d Cir. 2003) (apparent authority must be based on reliance at the time of the transaction, not after it).

### III. Plaintiffs Fail to State a Negligence or Negligent Supervision Claim against CCB Asia.

Plaintiffs contend that Lam was acting "squarely" within the scope of his employment in perpetrating the alleged fraud, *see Am. Compl.* ¶¶ 92, 123, but this contention is incompatible with a claim for negligent supervision, which requires "[t]he employee" to "**not** be acting within the scope of his or her employment."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-130 (2d Cir. 2019) (emphasis added).  Plaintiffs further fail to plead "a single prior act or allegation of misconduct committed by [Lam]" that would have put CCB Asia on notice that Lam had a propensity to commit fraud.  *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014).  Without such allegations, Plaintiffs' negligent supervision and retention claim must be dismissed.  *Id*.

Plaintiffs' negligence claim similarly fails because they have not alleged the existence of a duty owed to Plaintiffs, entities that CCB Asia did not know existed until the full scope of Vesttoo's fraud was revealed.  As a matter of law, a bank generally owes "no duty of care to a non-customer third party."  *Aiken v. Interglobal Mergers & Acquisitions,* No. 05 CIV. 5503, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006).  And no circumstances exist here that would create such a duty.  CCB Asia was "not in privity with [Plaintiffs]," CCB Asia was never contacted by Plaintiffs "in connection to [the LOCs]," and CCB Asia thus did not owe Plaintiffs "any sort of duty."  *Foot Locker*, 2015 WL 6499513, at *6.

---

[1] In considering a motion to dismiss, "the Court may take judicial notice of admissions in pleadings … filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action."  *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002).



* * * * *

For these reasons, if not withdrawn, Plaintiffs' Amended Complaint should be dismissed.

Sincerely,

_____
William Devaney (WD-0563)
Jacob M. Kaplan  (JK-0696)
Michael D. Hidalgo (*pro hac vice* forthcoming)

cc:    The Honorable Victor Marrero
       United States District Judge
       Southern District of New York