# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 10, 2024

Via Email & ECF

Stephen E. Morrissey,
    Susman Godfrey LLP,
        401 Union Street, Suite 3000,
            Seattle, Washington  98101.

Re:    *In re China Construction Bank Corp.* (This document relates to *Homeowners of America Ins. Co.* v. *China Construction Bank Corp.*, 24-cv-3591-VM)

Dear Mr. Morrissey:

Defendants China Construction Bank Corporation ("CCB") and China Construction Bank, New York Branch ("CCBNY") intend to move to dismiss Plaintiffs' first amended complaint ("Amended Complaint") on the following grounds.

## I.    CCB and CCBNY Are Not Subject to Personal Jurisdiction in New York.

### A.    The Court Lacks General Jurisdiction Over CCB and CCBNY.

Plaintiffs allege that CCB and CCBNY are subject to the Court's general personal jurisdiction, asserting they are "purposefully availing themselves" of various activities in New York. Am. Compl. ¶ 27. That is not the test. CCB is a "foreign bank headquartered in China" (*id.* ¶ 13), and therefore it is not "at home" in New York and not subject to the Court's general jurisdiction. *See Gucci Am., Inc.* v. *Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014); *Knight* v. *Standard Chartered Bank*, 531 F. Supp. 3d 755, 766 (S.D.N.Y. 2021). Plaintiffs acknowledge, as they must, that CCBNY is a branch of CCB (Am. Compl. ¶¶ 13, 16), and CCBNY therefore has the same legal identity as CCB for purposes of the Court's jurisdictional analysis. *See Greenbaum* v. *Handlesbanken*, 26 F. Supp. 2d 649, 652 (S.D.N.Y. 1998).

### B.    The Court Lacks Specific Jurisdiction Over CCB and CCBNY.

Plaintiffs still fail to allege an "articulable nexus" or "substantial relationship" between their claims and CCB or CCBNY's "transaction[s] in New York." *Strauss* v. *Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 19 (E.D.N.Y. 2016). Despite Plaintiffs' amendment, the only alleged "nexus" between Plaintiffs' claims and CCB and CCBNY's New York contacts is that a fake LOC bore CCBNY's address and stated that it was "presentable and payable at" CCBNY's office. Am. Compl. ¶¶ 64-67. Plaintiffs allege that Chun-Yin Lam, a Hong Kong-based CCB Asia employee, transmitted the forged LOC to HOA in Irving, Texas. *Id.* ¶¶ 60, 85. Plaintiffs allege that "Lam perpetrated the fraud on HOA using [CCB and CCBNY's] premises" (*id.* ¶ 132), but Plaintiffs do

Mr. Stephen E. Morrissey                                                                    -2-

not—and cannot—allege that any of Lam's conduct took place in or was directed towards New York, Plaintiffs' conclusory attempt to do so notwithstanding (*id.* ¶ 67). Plaintiffs' claims consequently are "unmoored" from CCB and CCBNY's contacts with New York. *Licci* v. *Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012).[1]

## II.      Plaintiffs Fail To State a Fraud Claim.

Far from satisfying Rule 9(b), Plaintiffs' fraud claim is rife with chronological and factual incoherencies. *First*, Plaintiffs allege that HOA entered the 2021 reinsurance contract based on "material false representations that CCB had issued valid letters of credit for HOA's benefit made by CCB's employees and agents directly to HOA." Am. Comp. ¶ 121. But Plaintiffs do not allege any direct communications from CCB to HOA before HOA entered that contract. The fraudulent collateral letter appended to Plaintiffs' Amended Complaint does not even represent that an LOC ***had been issued***, just that one with to-be-negotiated terms and conditions ***would be issued*** if various conditions precedent were satisfied.[2] *See id.* Ex. A. *Second*, Plaintiffs allege that they relied on Lam's apparent authority to issue LOCs out of CCBNY but do not allege that they were aware of Lam's position or ever attempted to communicate with him until July 2023—over a year-and-a-half after they had entered into the operative reinsurance contract. Indeed, Plaintiffs do not allege that they ever heard of Lam until his name appeared on two shipping labels from December 2022 and January 2023 bearing the address of a retail branch of a CCB subsidiary in Hong Kong. *Id.* ¶¶ 59-61, 69-70. Further, throughout the Amended Complaint, Plaintiffs lump all three Defendants together, presumably a litigation tactic to muddy the waters and obscure the fact that Lam was not CCB's or CCBNY's employee. Even if Lam were (and he was not), Plaintiffs fail to allege that issuing hundreds of millions of dollars of LOCs was within the scope of Lam's authority. In fact, Plaintiffs do not allege that any CCB entity made any representation to HOA about the scope of Lam's authority. Rather, Plaintiffs allege that CCB "made statements to the public . . . that affirmatively created the impression that CCB was a valid and regular issuer of reliable letters of credit in reinsurance transactions." Am. Compl. ¶ 124. But those alleged statements were not directed to HOA, had nothing to do with *Lam's* authority to issue LOCs, and

---

[1] Plaintiffs allege other assorted predicates for jurisdiction, including that (1) CCB is regulated by U.S. and N.Y. regulators (Am. Compl. ¶ 16); (2) the fraudulent LOC is governed by the UCC (*id.* at 16 ¶¶ 30-31); (3) CCB consented to jurisdiction in its application to be listed as a Qualified U.S. Financial Institution by the National Association of Insurance Commissioners (*id.* at 15 ¶ 33-16 ¶ 29); (4) "Defendants" filed an unrelated lawsuit in the SDNY (*id.* ¶ 27); (5) CCB consented to service of process under N.Y. Banking Law § 200(3)(a) (*id.* at 14 ¶ 30); and (6) Defendants engaged in unrelated transactions in New York (*id.* at 16 ¶ 32). None of those allegations suffice to establish jurisdiction.

[2] Plaintiffs allege that obtaining "[a] genuine and reliable letter of credit was critical" to the December 2021 reinsurance transaction (*id.* ¶ 45), but simultaneously allege that they did not receive the fraudulent LOC until a year later (*id.* ¶ 64).

Mr. Stephen E. Morrissey                                                    -3-

cannot reasonably be understood to mean that all employees of any CCB-affiliated entity anywhere in the world have the authority to issue LOCs (let alone nine-figure LOCs) on behalf of CCBNY.

Further, to the extent Plaintiffs relied on the fake LOC, their reliance was unreasonable as a matter of law given the "context of the transaction." *Emergent Cap. Inv. Mgmt., LLC* v. *Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003). Plaintiffs' only allegations in support of their reliance are that their "experienced reinsurance broker at Gallagher" did not express skepticism and that Plaintiffs received a copy of the forged collateral letters and LOC in a mailing from Lam in Hong Kong. Am. Compl. ¶¶ 62, 63, 71. However, plaintiff Porch.com, Inc. admits in a lawsuit that it filed in Texas that Gallagher did not come close to "using reasonable diligence" and "ignored critical red flags that would have warned any reasonably diligent insurance broker" about the validity of the fake LOC. *Porch.com, Inc.* v. *Arthur J. Gallagher & Co.*, 3:24-cv-01475 (N.D. Tex. June 14, 2024), Dkt. 1-5 at ¶ 8. Plaintiffs' assumption that HOA had obtained hundreds of millions of dollars as collateral as of December 2021 when even the collateral letter stated otherwise, and without performing basic due diligence, is unreasonable as a matter of law. *See, e.g., Royal Am. Managers, Inc.* v. *IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989) (plaintiff's reliance without even "minimal diligence" was unreasonable).

## III. Plaintiffs Fail To State a Negligent Supervision Claim.

Lam was not an employee of CCB or CCBNY, which is fatal to Plaintiffs' negligent supervision claim against CCB and CCBNY. *Wang* v. *New York-New Jersey Section of Ninety-Nines Inc.*, 2019 WL 13220927, at *6 (S.D.N.Y. Sept. 17, 2019) (dismissing negligent supervision claim where plaintiff failed to plead employer-employee relationship). Further, Plaintiffs fail to show that CCB or CCBNY "knew or should have known" that Lam had a propensity for fraud "prior to the injury's occurrence." *Rich* v. *Fox News Network, LLC*, 939 F.3d 112, 129 (2d Cir. 2019). Plaintiffs continue to point to the fraudulent documents themselves as evidence that Lam had a propensity for fraud. Am. Compl. ¶ 130 ("Defendants knew or should have known of Lam's propensity to carry out fraud against others [] before the fraudulent scheme even commenced, but at the very least, *after* the fraudulent collateral letters and letter of credit to HOA were issued." (emphasis added)). But Plaintiffs do not allege any facts that would have put CCB on notice that Lam had a propensity to commit fraud "*prior to the injury's occurrence*." *Rich*, 939 F.3d at 129 (emphasis added).

## IV. Plaintiffs Fail To State a Negligence Claim.

Courts have repeatedly refused to hold banks liable for negligence relating to the intentional torts of third parties directed at non-customers. *See, e.g., Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006); *Fisher* v. *New York Chase Manhattan Bank*, 2018 WL 1274560, at *4 (S.D.N.Y. Mar. 8, 2018) ("Generally, banks owe no duty of care to their non-customers."). Plaintiffs allege no duty owed by CCB or CCBNY.

Mr. Stephen E. Morrissey                                                    -4-

                                        Sincerely,

                                        /s/ Justin J. DeCamp
                                        Justin J. DeCamp
                                        Shari D. Leventhal
                                        Sheeva L. Nesva
                                        Aaron J. Blake
                                        SULLIVAN & CROMWELL LLP
                                        125 Broad Street
                                        New York, New York  10004-2498
                                        Telephone:  (212) 558-4000
                                        Facsimile:  (212) 291-9307

                                        /s/ Lanier Saperstein
                                        Lanier Saperstein
                                        Daniel P. Goldberger
                                        Joshua R. Kornfield
                                        DORSEY & WHITNEY LLP
                                        51 West 52nd Street
                                        New York, New York  10019-6119
                                        Telephone: (212) 415-9200
                                        Facsimile: (212) 953-7201

cc:    The Honorable Victor Marrero
       United States District Judge
       Southern District of New York