# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
401 UNION STREET, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 516-3880
FAX (206) 516-3883
WWW.SUSMANGODFREY.COM

| SUITE 5100 | SUITE 1400 | ONE MANHATTAN WEST |
|---|---|---|
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE STARS | NEW YORK, NEW YORK 10001-8602 |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | (212) 336-8330 |
| (713) 651-9366 | (310) 789-3100 | |

STEPHEN MORRISSEY
DIRECT DIAL (206) 373-7380

E-MAIL SMORRISSEY@SUSMANGODFREY.COM

**Via Email and ECF**                                                              October 17, 2024

William Devaney
Baker & McKenzie LLP
william.devaney@bakermckenzie.com

RE:   *In re China Construction Bank Corp.* (This document relates to: *Homeowners of America Ins. Co. v. China Construction Bank Corp.*, No. 24-cv-3591-VM)

Dear Counsel,

Your October 10, 2024 letter fails to identify any basis for Defendant China Construction Bank (Asia) Corp. Ltd. ("CCB Asia") to proceed with a motion to dismiss Plaintiffs' First Amended Complaint. CCB Asia has raised no materially new arguments since its prior letter and repeats many of the same errors. In the meantime, Plaintiffs' case has only strengthened with the amended complaint's inclusion of further particularized factual allegations.

### I.   This Court has personal jurisdiction over CCB Asia.

The Court has *specific* personal jurisdiction over CCB Asia because Plaintiffs' claims arise from fraudulent transactions centered in and inexorably linked to New York. *See* C.P.L.R. § 302(a)(1). CCB Asia's efforts to evade this reality do not work. ***First***, CCB Asia attempts to disclaim the conduct of its own employee and agent, Chun-Yin Lam, by impermissibly rewriting Plaintiffs' allegations. CCB Asia characterizes Lam as a "low-level employee" who merely "stuff[ed] envelopes," and whose conduct did not benefit CCB Asia.[1] Dkt. 58 at 1. But this argument is factually wrong and legally improper. It is Plaintiffs' complaint, not Defendants' lawyers' narrative, that governs the inquiry. Plaintiffs' allegations establish that Lam, whom CCB *promoted* during his fraud, had authority to issue letters of credit ("LOCs") on behalf of CCB Asia. *E.g.*, FAC ¶¶ 4, 85. Lam's New York-centered conduct, which CCB Asia enabled, is imputed to CCB Asia for the purpose of personal jurisdiction. *See Loc. 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 557–59 (E.D.N.Y. 1998) (agent's conduct imputed to principal for personal-jurisdiction purposes); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467–73 (1988) (same).

***Second***, Lam's fraudulent LOC scheme was intentionally directed at New York and relied on the legitimacy of New York's banking laws and its regulatory and licensing regimes. *See* FAC

---

[1]   CCB Asia again relies on the factually inapt case of *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69 (2d Cir. 2023), in which the court held that a priest was not acting as the Church's agent when he sexually assaulted a boy. Unlike an employee's sexual misconduct—which quite obviously "do[es] not further an employer's business," *id.* at 74 (citation omitted)—Lam's conduct here *did* benefit CCB Asia, *see* FAC ¶¶ 46, 92–93, and, as Plaintiffs have alleged, there otherwise existed actual and/or apparent authority sufficient for both liability and the exercise of personal jurisdiction, *id.* ¶¶ 4, 84–86, 90–91, 94–98, 122–27.

October 17, 2024
Page 2

¶¶ 27–29, 67, 90; *id.* at 14–15 ¶¶ 31–32. Critically, the fraudulent LOCs were issued from, and made payable at, CCB Asia's New York affiliate, China Construction Bank New York Branch ("CCBNY"), *id.* ¶¶ 65-67, 90, located in midtown Manhattan. These New York connections were essential to the fraud because *only* a NAIC-approved bank was authorized to collateralize Plaintiffs' reinsurance facility, and *only* CCBNY was so approved. *E.g.*, *id.* ¶¶ 47, 50, 56, 67, 90, 117. Absent CCB Asia's purposeful availment of New York's laws, markets, and institutions through Lam, this multi-hundred-million-dollar fraud could not have occurred. These allegations more than suffice to establish personal jurisdiction over CCB Asia.[2]

**II.     Plaintiffs have adequately stated a fraud claim against CCB Asia.**

CCB Asia again burns daylight arguing that Plaintiffs' allegations fail to distinguish among the Defendant entities. Dkt. 58 at 2. This argument is wrong, as the Amended Complaint repeatedly distinguishes between the entities where appropriate. It refers to the three individual CCB entities nearly *two hundred times* in total. CCB Asia cites not a single example of a collective allegation that somehow fails to "give [it] fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Nothing in Rules 8 or 9 prohibits collective reference to corporate affiliate defendants when the allegations are the same as to each and put them on adequate notice. *See* Dkt. 41 at 2 (addressing this argument and citing cases). Moreover, any collective allegations regarding all three Defendants are consistent with how the Defendants themselves communicate with the public—*i.e.*, collectively on behalf of CCB Corp. and each of its subsidiaries. *See, e.g.*, FAC ¶¶ 27–29.

CCB Asia's remaining attacks on Plaintiffs' fraud claim consist largely of already-rebutted arguments and factual disputes that may not be resolved at the pleadings stage. ***First***, it is not "wildly implausible" that Lam's conduct benefited CCB Asia. Dkt. 58 at 2. For one, Lam's issuance of a $300 million LOC was a service to CCB Asia's *real* client, Yu Po Finance. FAC ¶ 92. More globally, issuance of the New York-based LOCs served to expand CCB Asia's banking presence in the United States, including by engaging sophisticated reinsurance brokerages. *Id.* ¶¶ 46, 93, 101.

***Second***, Plaintiffs adequately allege that Lam's conduct fell within the scope of his employment duties, which is an inquiry that "depends largely on the facts and circumstances peculiar to each case." *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979). In its latest letter, CCB Asia (i) seeks to impose its preferred interpretation of one of the job postings for Lam's position; (ii) asserts that "Plaintiffs should know" that Lam's responsibilities did not include the issuance of LOCs; and (iii) contends that "a reasonable person would not infer" that Lam had the requisite authority. *See* Dkt. 58 at 2. CCB Asia is free to make these arguments later. But they are impermissible at the pleadings stage. Here, Plaintiffs have sufficiently alleged that CCB Asia's

---

[2] CCB Asia's authorities do not alter this conclusion. Unlike in *Mayes v. Leipziger*, where the California defendants "did not initiate the contact with the individuals who were in New York," 674 F.2d 178, 185 (2d Cir. 1982), here, CCB Asia, through Lam, purposefully directed the fraudulent transactions at New York and wrapped the LOCs in the legitimacy of CCBNY's New York banking status—precisely *because* the LOCs would not otherwise be acceptable. FAC ¶¶ 47, 56, 67, 90, 117. *NovelAire Techs., L.L.C. v. Munters AB* is even farther afield. *See* No. 13-CIV-472, 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013). There, the plaintiff based personal jurisdiction on the defendant's alleged "assist[ance]" in a corporate acquisition. But the defendant "did nothing in New York in connection with that acquisition." *Id.* at *10. Here, the entire fraud is centered in and depends upon New York.

October 17, 2024
Page 3

own public postings demonstrate that Lam's many responsibilities as an "Assistant Relationship Manager," and later—having been *promoted*—as a "Relationship Manager," FAC ¶¶ 87, 111, included the issuance of LOCs like the ones that harmed Plaintiffs, *e.g.*, *id.* ¶¶ 90–92.

*Third*, CCB Asia rehashes its prior arguments that Plaintiffs' reliance on the facially valid LOCs was unreasonable. As explained before, the reasonableness of Plaintiffs' reliance is a fact-intensive question not fit for a motion to dismiss. *See KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*, 528 F. Supp. 3d 192, 203–04 (S.D.N.Y. 2021). Regardless, CCB Asia is wrong to suggest that Plaintiffs performed "no independent investigation." Dkt. 58 at 2. HOA took many steps to confirm that CCB was a legitimate and reliable issuer of LOCs, including by reviewing public reports, NAIC documentation, and other indicia of the LOCs' legitimacy. *E.g.*, FAC ¶¶ 47–61. And Plaintiffs' broker's lapses in diligence became apparent only in hindsight. At the time, Plaintiffs reasonably believed that their broker had performed all necessary diligence and, in accepting the LOCs, relied on that belief in addition to their own investigatory steps. *See id.* ¶ 71.

*Fourth*, CCB Asia raises a bizarre argument that CCB Asia's relevant agent is not Lam but is instead "Xu Yingde," the LOCs' fictitious signatory, and that Xu lacked the necessary authority because he is not real. CCB Asia cites no authority for the proposition that a principal can evade liability on the basis that its fraudster-agent operated through a fictitious person.

*Fifth*, CCB Asia again misses the mark on apparent authority. Plaintiffs do not rely only on Lam's "own acts" to establish his agency. *See* Dkt. 58 at 3. Instead, CCB Asia *itself* enabled Lam's fraud by providing him with substantial indicia of authority essential to the fraud, including its mail services, corporate phone line, official e-mail, red-ink stamp, the letterhead of its New York affiliate, and the job title of "Assistant Relationship Manager," and—after Lam's promotion—"Relationship Manager." *See* FAC ¶¶ 96–97, 111, 116, 124–25. *See* Restatement (Second) of Agency § 8 cmt. b; *Bardach v. Weber*, 42 N.Y.S.3d 11, 12 (1st Dep't 2016); *F.D.I.C. v. United Gen. Title Ins. Co.*, No. 11-4610, 2014 WL 3611835, at *3–6 (E.D.N.Y. July 3, 2014). CCB Asia's timing argument is also wrong. Plaintiffs reiterate that HOA relied on a December *2022* communication received directly from CCB Asia before securing its *2023* reinsurance coverage. FAC ¶¶ 59–66, 69–71.

**III.   Plaintiffs have sufficiently stated claims for negligence and negligent supervision.**

As to Plaintiffs' negligent-supervision claim, CCB Asia repeats its prior arguments that (i) the claim is "incompatible" with Plaintiffs' *respondeat superior* allegations, and (ii) Plaintiffs have not alleged that CCB Asia should have known of Lam's propensity for misconduct. Dkt. 58 at 3. These arguments fail for the same reasons Plaintiffs identified in their previous letter, *see* Dkt. 41 at 3, which Defendants do not acknowledge.

As to Plaintiffs' negligence claim, CCB Asia contends that "a bank generally owes 'no duty of care to a non-customer third party.'" Dkt. 58 at 3. But HOA is not a "non-customer third party." HOA was the *named beneficiary* of a letter of credit issued and delivered directly to it by a CCB Asia employee from a Hong Kong branch, guaranteeing $300 million. "The scope of any . . . duty of care varies with the foreseeability of the possible harm and takes into consideration the reasonable expectations of the parties and society in general." *Elmaliach v. Bank of China Ltd.*, 971 N.Y.S.2d 504, 512 (1st Dep't 2013). It was perfectly foreseeable that CCB Asia's failure to implement adequate fraud safeguards would result in *this* type of injury to *this* type of plaintiff, *i.e.*, a colossal financial loss to the beneficiary of a fake LOC. *See* FAC ¶¶ 137–40.

October 17, 2024
Page 4

        Respectfully submitted,

        SUSMAN GODFREY L.L.P.

        By: */s/ Stephen E. Morrissey*
            Stephen E. Morrissey (*pro hac vice*)
            Kemper P. Diehl
            401 Union Street, Suite 3000
            Seattle, WA 98101
            Telephone: (206) 516-3880
            smorrissey@susmangodfrey.com
            kdiehl@susmangodfrey.com

            Geng Chen
            One Manhattan West, 50th Fl
            New York, NY 10001
            Telephone: (212) 336-8330
            gchen@susmangodfrey.com

            Allen J. Hernandez (*pro hac vice*)
            1000 Louisiana, Suite 5100
            Houston, TX 77002
            Telephone: (713) 651-9366
            ahernandez@susmangodfrey.com

        *Attorneys for Plaintiffs*

cc:    The Honorable Victor Marrero
       United States District Judge
       Southern District of New York