SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
401 UNION STREET, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 516-3880
FAX (206) 516-3883
WWW.SUSMANGODFREY.COM

SUITE 5100
1000 LOUISIANA STREET
HOUSTON, TEXAS 77002-5096
(713) 651-9366

SUITE 1400
1900 AVENUE OF THE STARS
LOS ANGELES, CALIFORNIA 90067-6029
(310) 789-3100

ONE MANHATTAN WEST
NEW YORK, NEW YORK 10001-8602
(212) 336-8330

Stephen Morrissey
Direct Dial (206) 373-7380

E-Mail smorrissey@susmangodfrey.com

**Via Email and ECF**                                                October 17, 2024

Justin DeCamp
Sullivan & Cromwell LLP
decampj@sullcrom.com

RE:     *In re China Construction Bank Corp.* (This document relates to: *Homeowners of America Ins. Co. v. China Construction Bank Corp.*, No. 24-cv-3591-VM)

Dear Counsel,

Your October 10, 2024 letter fails to identify any basis for Defendants China Construction Bank Corporation ("CCBC") and China Construction Bank New York Branch ("CCBNY") to proceed with a motion to dismiss Plaintiffs' First Amended Complaint.

## I.     This Court has personal jurisdiction over CCBC and CCBNY.

Plaintiffs have demonstrated through detailed allegations that the Court has specific personal jurisdiction over CCBC and CCBNY,[1] as this case arises from Defendants' intentional presence in, availment of, and transaction of business centered in and directed at New York. *See* C.P.L.R. § 302(a)(1). Plaintiffs' allegations include:

- CCBC and its subsidiaries—in their *own words*—"operate[] in the United States primarily through CCBNY," a physical office they established in Manhattan under New York banking laws because of "the advantageous location of New York, the dominant financial markets in the world." FAC ¶¶ 27, 28. This action arises from, and depends critically on, CCB's presence in New York and the New York regulatory and licensing regimes to which CCB submitted. *Id.* ¶ 27; *id.* at 14–15 ¶ 31. Had the fraudulent letter of credit ("LOC") not been issued on *CCBNY* letterhead, payable *in New York* by CCBNY (the only CCB branch qualified to issue it), Plaintiffs could not have accepted the LOC. *E.g.*, *id.* ¶¶ 47, 56, 65–67, 90, 117.

- CCBC consented to service of process carrying "the same force and effect as if it were a domestic corporation and had been lawfully served with process within the state" in "any action or proceeding against it on a cause of action arising out of a transaction with its New York . . . branch." *Id.* at 14 ¶ 30 (quoting N.Y. Banking Law § 200(3)(a)). This is such an action. *Id.*

- "CCBNY (and thus CCBC) was made aware of multiple LOCs issued by [Chun-Yin] Lam, purportedly payable at CCBNY" in April 2022. *Id.* ¶ 112. CCBNY communicated to another insurance company and its auditor that the "LCs were issued by another China Construction Bank branch," but then "failed to investigate" and to stop Lam from issuing more fake LOCs

---

[1] Contrary to Defendants' assertion, *see* Dkt. 59 at 1, Plaintiffs do not purport to invoke general personal jurisdiction over the Defendants. Specific jurisdiction exists.

October 17, 2024
Page 2

from CCBNY—like the one issued to Plaintiffs months later. *Id.* ¶¶ 112–13, 138. Plaintiffs' negligence claims arise directly from this failure *at CCBNY in New York*.

- CCBC agreed to the jurisdiction of New York courts with respect to all activities pertaining to its NAIC application, *id.* at 15 ¶ 33, which includes this case, as Plaintiffs could not have accepted the LOC had it not been issued by NAIC-approved CCBNY, *id.* at 15–16 ¶ 29.

- CCBC filed an IRS Form W-8ECI in which it "[c]ertifi[ed]" as a "Foreign Person[]" that its "Income *Is Effectively Connected With the Conduct of a Trade or Business* in the United States." *Id.* ¶¶ 21–22 (emphasis added). Again, this case arises from that "Trade or Business."

Remarkably, CCBC and CCBNY relegate Plaintiffs' substantial personal-jurisdiction allegations to a *footnote* and assert, in conclusory fashion with no authority, that "[n]one of those allegations suffice to establish jurisdiction." Dkt. 59 at 2 n.1. Defendants' non-response is telling: there is no real dispute that CCBC and its *New York* affiliate are subject to personal jurisdiction in New York for claims arising from (i) a fraud directed at, dependent on, and laundered through that New York affiliate, and (ii) the negligence of that New York affiliate *in* New York.

## II.    Plaintiffs have adequately stated a fraud claim against CCBC and CCBNY.

Defendants' kitchen-sink attack on Plaintiffs' straightforward fraud claim has no merit.

*First*, CCBC and CCBNY are wrong to argue that the fraudulent December 2021 letter guaranteeing the issuance of a CCB LOC was not a "direct communication[] from CCB to HOA before HOA entered [its reinsurance] contract." *Id.* at 2. Plaintiffs allege that the fraudulent letter at issue, facially "approved by" a Senior Vice President of CCBC, was *attached to* HOA's reinsurance contract and accepted by HOA's reinsurance broker "as valid and reliable collateral." FAC ¶¶ 57–58. More importantly, the fraudulent "communication" happened *all over again* in 2022, when HOA received a substantially identical letter (with a modified dollar amount) *and* a LOC issued from and payable at CCBNY directly from a CCB branch office and CCB employee Chun-Yin Lam, all of which HOA relied on in securing its *2023* coverage. *Id.* ¶¶ 59–71.

*Second*, CCBC and CCBNY miss the mark in fixating on when Plaintiffs first "heard of Lam" or became "aware of Lam's position." Dkt. 59 at 2. Whether operating under his own name and title, or as the fictitious Xu Yingde, Lam was cloaked with indicia of authority, including CCBC's red-ink stamp, mail services, and email services, each of which established to HOA the legitimacy of the 2021 and 2022 fraudulent letters. *See* Restatement (Second) of Agency § 8 cmt. b; *id.* § 27 cmt. a. Nor does it matter when Plaintiffs first "attempted to communicate with [Lam]." Dkt. 59 at 2. Apparent authority is based on the *principal's* manifestations to HOA, not HOA's communications to the agent. *See* Restatement (Second) of Agency § 8 cmt. b; *id.* § 27 cmt. a.

*Third*, CCBC and CCBNY argue that Plaintiffs impermissibly group Defendants together in their pleadings. Not so. Plaintiffs' Amended Complaint individually refers to the three individual CCB entities nearly *two hundred times* in total. CCBC and CCBNY do not—and could not—contend that they lack "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up); *see Conservation L. Found., Inc. v. Shell Oil Co.*, 628 F. Supp. 3d 416, 441 (D. Conn. 2022) (rejecting this argument where defendants did "not claim to lack adequate notice of the claims asserted against them").

*Fourth*, contrary to Defendants' suggestion, there is no requirement that CCB's

October 17, 2024
Page 3

communications regarding its LOC services or the authority of its personnel be "directed to HOA" specifically. Dkt. 59 at 2. "The manifestation of the principal may be made directly to a third person, *or may be made to the community, . . . by advertising, . . . or by continuously employing the agent*." Restatement (Second) of Agency § 8 cmt. b (emphasis added). Moreover, whether such statements may "reasonably be understood to mean" that a tenured CCB Relationship Manager had authority to issue LOCs like these, *see* Dkt. 59 at 3, is plainly a fact question that may not be resolved at the pleadings stage.

 *Fifth*, CCBC and CCBNY are wrong that Plaintiffs' reliance on the fraudulent LOCs was "unreasonable as a matter of law." *Id.* As a general matter, the reasonableness of Plaintiffs' reliance is a fact-intensive question not fit for a motion to dismiss. *See KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*, 528 F. Supp. 3d 192, 203–04 (S.D.N.Y. 2021). But regardless, HOA took *many* steps to confirm the legitimacy of the LOCs and of CCB (specifically CCBNY) as a LOC issuer, including by reviewing public reports, NAIC documentation, and other indicia of the LOCs' legitimacy. *E.g.*, FAC ¶¶ 47–71. CCBC and CCBNY may not ignore these allegations by unilaterally characterizing HOA's diligence as "minimal." As to Plaintiffs' broker's lack of diligence, HOA became aware of those failures *only in hindsight*, when the fraud was uncovered. At the time, HOA reasonably believed that its broker had performed all necessary diligence and, in accepting the LOCs, relied on that belief in addition to its own investigatory steps. *See id.* ¶ 71. Notably, other sophisticated parties, like White Rock, fell victim to CCB's scheme as well. *Id.*

### III. Plaintiffs have sufficiently stated claims for negligence and negligent supervision.

 Plaintiffs have adequately stated negligence claims.[2] CCBC and CCBNY vaguely contend that banks are not "liable for negligence relating to the intentional torts of third parties directed at non-customers." Dkt. 59 at 3. But the torts here were not committed by "third parties"; they are Defendants' *own* fraud and negligence. And far from a "non-customer," HOA was the *named beneficiary* of a letter of credit sent by a CCB employee, guaranteeing nearly $300 million. "The scope of any . . . duty of care varies with the foreseeability of the possible harm and takes into consideration the reasonable expectations of the parties and society in general." *Elmaliach v. Bank of China Ltd.*, 971 N.Y.S.2d 504, 512 (1st Dep't 2013). It was perfectly foreseeable that CCBC and CCBNY's failures to prevent and detect fraud would result in *this* type of injury to *this* type of plaintiff, *i.e.*, a colossal loss to the beneficiary of a fake letter of credit. *See* FAC ¶¶ 137–40.

 Moreover, as Plaintiffs allege—and as Defendants fail to mention—CCBC and CCBNY learned *as early as April 2022* that suspicious and likely fraudulent LOCs were being issued in CCBNY's name, and they took no action. CCBNY was contacted in April 2022 "in connection with [LOCs] purportedly payable at CCBNY." *Id.* ¶ 112. CCBNY responded by providing contact information for *CCB Asia* and stating that "[a]ll the four LCs were issued by another [CCB] branch . . . rather than []our New York Branch." *Id.* Despite the apparent irregularity of multiple LOCs issued from *CCB Asia* on *CCBNY* letterhead and made payable at *CCBNY*, no one at CCBC or CCBNY did anything in response. *Id.* ¶ 113. After April 2022, Lam would go on to fabricate more LOCs, including the $300 million December 2022 LOC sent to HOA. *Id.* ¶¶ 59–71, 113.

---

[2] Plaintiffs assert claims for negligence and negligent supervision. While negligent supervision claims generally require an employment relationship, Plaintiffs lack visibility into CCB's employment agreements and have specifically alleged that Lam was employed by CCBC and/or CCB Asia. *E.g.*, FAC ¶ 86. If discovery shows that Lam was never an employee of a specific Defendant, that Defendant can bring a dispositive motion at that time.

October 17, 2024
Page 4

Respectfully submitted,

SUSMAN GODFREY L.L.P.

By:  */s/ Stephen E. Morrissey*
Stephen E. Morrissey (*pro hac vice*)
Kemper P. Diehl
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
smorrissey@susmangodfrey.com
kdiehl@susmangodfrey.com

Geng Chen
One Manhattan West, 50th Fl
New York, NY 10001
Telephone: (212) 336-8330
gchen@susmangodfrey.com

Allen J. Hernandez (*pro hac vice*)
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
ahernandez@susmangodfrey.com

*Attorneys for Plaintiffs*

cc:    The Honorable Victor Marrero
       United States District Judge
       Southern District of New York